Benrus Watch Company, Inc., v. Frankel et al.

*Hyman Rockmaker*, for plaintiff.
*Harry A. Dower*, for defendants.

GARDNER, J., August 15, 1955.—Plaintiff by a complaint in equity requested a preliminary injunction to restrain defendants from selling Benrus watches at prices less than those fixed by plaintiff in a fixed price contract entered into between plaintiff and a stranger

not a party to this action. Defendants were not a party to the price fixing contract.

The original action proceeded under the so-called Fair Trade Act of Pennsylvania of June 5, 1935, P. L. 266, as amended by the Act of June 12, 1941, P. L. 128, 73 PS §§7, 8, et seq. After a hearing held, the court, on February 14, 1955, entered a preliminary injunction and enjoined defendants from ". . . offering for sale, or selling any watches bearing the plaintiff's trade-mark, brand or name 'Benrus' at prices less than those stipulated for the same . . ." in the price fixing contract entered into by plaintiff with the aforementioned stranger.

Thereafter defendants notified plaintiff of their desire to close out their stock of Benrus watches which defendants had on hand without reference to the price fixing agreement, or to the prices fixed by plaintiff. Plaintiff took the position that section 4 of its contract with the stranger, which was attached to the original complaint, prohibits defendants, petitioners in this matter, from doing so.

Section 4 of the contract provides:

"If retailer desires to close out its stock of Benrus commodities, he shall give Benrus at least ten (10) days' prior written notice thereof, and Benrus shall have the right to repurchase from retailer, and retailer shall be obligated to sell and deliver to Benrus, all Benrus commodities in retailer's possession and retailer will accept as full payment therefor, by way of credit or cash, the cost thereof to retailer, or the then current wholesale price, whichever is lower."

Plaintiff then offered to purchase the stock of Benrus watches which defendants had on hand at the current wholesale prices. Defendants declined this offer. Therefore, defendants filed their petition to amend the order by adding at the end thereof the following paragraph:

"No part of this order shall be construed in any way as a limitation upon the right, power, or privilege of

the defendants, or either of them, to close out their stock of Benrus watches for the purpose of discontinuing delivering Benrus watches, nor shall the defendants, or either of them, be required to give any notice of the closeout sale to the plaintiff, nor be required to offer their stock of Benrus watches to the plaintiff, nor to sell and deliver the same to the plaintiff, either prior to or during the conduct of the closing-out sale."

Plaintiff asserts that defendants are bound by all of the terms of the contract entered into by plaintiff with the stranger, and accordingly section 4 thereof is controlling, and that if the court were to grant the equitable relief requested, the effect would be to vitiate both the price fixing agreement and the injunction.

The Pennsylvania Fair Trade Act, supra, in section 1, provides, inter alia:

"No contract relating to the sale or resale of a commodity which bears, or the label or content of which bears, or the vending equipment from which said commodity is sold to the consumer bears the trademark, brand or the name of the producer or owner of such commodity, and which is in fair and open competition with commodities of the same general class produced by others, shall be deemed in violation of any law of the State of Pennsylvania by reason of any of the following provisions which may be contained in such contract:

"(a)  That the buyer will not resell such commodity, except at the price stipulated by the vendor.

"(b)  That the buyer of such commodity require upon his resale of such commodity that the purchaser from him agree that such purchaser will not in turn resell except at the price stipulated by the vendor of the buyer.

"Such provisions in any contract shall be deemed to contain or imply conditions that such commodities

may be resold without reference to such agreement in the following cases:

"(a) In closing out the owners stock for the purpose of discontinuing delivering any such commodity. . . ."

Section 2 of the act provides:

"Wilfully and knowingly advertising, offering for sale, or selling any commodity at less than the price stipulated in any contract entered into pursuant to the provisions of section one of this act, whether the person so advertising, offering for sale, or selling is, or is not, a party to such contract, is unfair competition and is actionable at the suit of such vendor, buyer or purchaser of such commodity."

This Fair Trade Act was held constitutional by the Supreme Court of Pennsylvania in its opinion filed June 27, 1955, Burche Co. v. General Electric Company, 382 Pa. 370.

Consequently, although defendants are nonsignatories to plaintiff's price fixing agreement, they are nevertheless bound by the provisions thereof which are not in conflict with the statutory provisions of this Fair Trade Act. Plaintiff's authority or power to so bind defendants, to an agreement which was not signed by them, is strictly statutory and is in derogation of the common law. Plaintiff must therefore be bound by *all* of the provisions of the statute upon which it relies for its power.

It is readily noted that the instrument creating this power (Fair Trade Act) likewise negatives any power in plaintiff to regulate a "close-out sale" by the provisions of any contract not signed by such vendor.

Since plaintiff seeks out the provisions of the Fair Trade Act granting it power to fix prices below which its watches may not be sold, it likewise must be bound by the provision of the same statute which provides that the price fixing provision relating to brand name commodities "in any contract shall be deemed to con-

tain or imply conditions that such commodities may be resold *without reference to such agreement* in the following cases: (a) In closing out the owner's stock for the purpose of discontinuing delivering any such commodity . . ." (Italics supplied.)

Thus it is evident that section 4 of plaintiff's price fixing agreement is not to be referred to and it therefore naturally follows that the section cannot bind defendants since the statute specifically provides that the price fixing provision which is binding on defendants is "deemed to contain or imply conditions that such commodities may be resold *without reference to such agreement" in closing out sales* pertaining to the commodities covered by the price fixing agreement. (Italics supplied.)

Plaintiff concedes that the Fair Trade Act permits bona fide closing out sales but contends that defendants should not be allowed to do so, because to do so would permit them to accomplish price cutting by a palpable subterfuge.

Plaintiff, in this contention, in effect is asking the court to legislate for the Commonwealth. In section 4 of the contract, supra, plaintiff has endeavored to supply for itself what the legislature has failed to supply. While a majority of the States require notice and an opportunity to repurchase, our Pennsylvania statute does not contain these provisions and, consequently, plaintiff's contention is untenable.

The order which defendants seek to have amended was issued with full knowledge of defendants' counsel on February 14, 1955, and said order is to remain effective against defendants until amended or vacated. Defendants' petition to amend this order is directed to the equity side of this court. One of equity's best known maxims is: "He that seeks equity must do equity."

In order that defendants cannot by a palpable subterfuge accomplish price cutting of plaintiff's commod-

ities, which the statute and our order granting the injunction seek to prevent, it would appear both equitable and just that defendants furnish plaintiff with a detailed inventory of the Benrus watches, with serial numbers, models, etc., which they had on hand at the time the injunction was granted, so as to prevent a continuing sale of Benrus watches by defendants, after they have exhausted the supply which they had on hand at the time of the entry of the injunction on February 14, 1955.

Now, August 15, 1955, for the reasons hereinbefore stated, and upon defendants furnishing plaintiff with a detailed inventory of the Benrus watches which they had on hand at the time the order entering the injunction was made on February 14, 1955, said order enjoining defendants is amended by adding at the end thereof the following paragraph:

"No part of this Order shall be construed in any way as a limitation upon the right, power, or privilege of the defendants, or either of them, to close out their stock of Benrus watches for the purpose of discontinuing delivering Benrus watches."